Jack SINGER and Sharon Singer, his wife, and JNS Profit Sharing Plan and JNS Money Purchase Pension Plan & Trust, Plaintiffs,

v.

SMITH BARNEY SHEARSON, a/k/a E.F. Hutton, Defendant.

No. 96–6130–CIV.

United States District Court, S.D. Florida.

April 22, 1996.

184

Arnold Y. Steinberg, Boca Raton, FL, for all plaintiffs.

Bennett Falk, Morgan, Lewis & Bockius LLP, Miami, FL, for defendant.

## ORDER

GONZALEZ, District Judge.

This Cause has come before the Court upon Defendant's Motion for Summary Judgment, filed on February 16, 1996. The motion has been fully briefed and is ripe for disposition.

Plaintiffs in this action seek redress for the allegedly fraudulent investment advice given to them by employees of Defendant. Plaintiffs initially submitted their claims for arbitration before the National Association of Securities Dealers ("NASD"). On August 8, 1995, the NASD ruled that the majority of Plaintiffs' claims were barred by Section 15 of the NASD Code of Arbitration Procedure, which provides:

> No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years shall have elapsed from the occurrence of the event giving rise to the act or dispute, claim or controversy. This section shall not extend any applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

Following dismissal of their claims by the NASD, Plaintiffs filed the present Complaint asserting similar claims against Defendant. Defendant now seeks summary judgment, arguing that Plaintiffs have waived their right to maintain an action in federal court, and that arbitration provides their exclusive avenue of relief.

■ The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

■ After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the

adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

 Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).[1] If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11.

In the present case, Defendant argues that Plaintiffs are contractually barred from pursuing their claims by Section 15 of the Code of the NASD, which was incorporated into each of the contracts entered into by the parties. Defendant's Motion is supported by the affidavit of Victor A. Machcinski, Jr., Defendant's Associate General Counsel. In his affidavit, Machcinski states that:

> all of the Plaintiffs have entered into customer agreements with Smith Barney with respect to [all of Plaintiffs' accounts]. Each of these customer agreements includes the following (or a substantially similar) provision:
>
>> Any controversy arising out of or relating to any of my accounts, to transactions with you, your officers, directors, agents and/or employees for me, or to this agreement, or the breach thereof, or relating to transactions or accounts maintained by me with any of your predecessor firms by merger, acquisition or other business combination from the inception of such accounts, shall be settled

by arbitration, in accordance with the rules then in effect of the NASD, or the Boards of Directors of the NYSE or the American Stock Exchange, Inc., as I may elect.

Affidavit of Machcinski, ¶ 9. Machcinski's affidavit is also accompanied by the agreements entered into by Plaintiffs, each of which includes a provision similar to the one quoted above.[2]

 Plaintiffs challenge neither the application of these provisions nor their incorporation of NASD Code § 15. Instead, Plaintiffs argue that their claims should not be barred by § 15 for a number of reasons. First, Plaintiffs argue that § 15 is equivalent to a statute of limitations, and should, therefore, be subject to tolling. The Court disagrees, and will instead follow those courts that have found that "the language of Section 15 unequivocally establishes a substantive limitation on the claims that may be submitted to arbitration." *Prudential Securities Inc., v. LaPlant,* 829 F.Supp. 1239, 1243 (D.Kan.1993), citing *PaineWebber v. Hofmann,* 984 F.2d 1372 (3d Cir.1993). *See also, e.g., Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir.1992). Such an approach is consistent with the controlling case law in this Circuit. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,* 62 F.3d 381 (11th Cir.1995).

Plaintiffs also argue that the purchase dates of the securities at issue do not constitute the occurrences or events giving rise to their claims. Instead, Plaintiffs argue, the acts they complain of frequently took place much later. While this is similar to an "equitable tolling" argument, the Eleventh Circuit has drawn fine distinctions in this area. A close analysis is therefore required.

In *Cohen, supra,* the Court of Appeals, through Judge Kravitch, held as follows:

> The Cohens purchased the limited partnership interests between 1985 and 1987. Merrill Lynch argues that the "occurrence

---

1. The standard for granting summary judgment mirrors the standard for directing a verdict under Fed.R.Civ.P. 50(a). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

2. While some of these agreements are not legible, in light of Machcinski's affidavit, and Plaintiffs' failure to contradict his testimony, the Court has no reason to question the similarity of these provisions.

or event giving rise to the act or dispute, claim or controversy," within the meaning of § 15, is the purchase of these interests, and thus, the Cohens claims are time-barred. It is not a foregone conclusion, however, that the purchase date is the relevant occurrence or event giving rise to the Cohens' claims, as neither § 15 nor any other provision of the NASD Code so provides.[FN4]

4. Courts have concluded that because section 15 is an eligibility requirement rather than a procedural statute of limitations, claims are not subject to equitable tolling. *See, e.g., Sorrells,* 957 F.2d at 513 (Section 15 cannot be tolled); *Hofmann,* 984 F.2d at 1378 (same). Although we believe this principle to be correct, it fails to resolve the question: what was the occurrence or event that gave rise to the Cohens' claims.

If the Cohens prove that Merrill Lynch reported false values for their investments through bogus statements,[FN5] then Merrill Lynch's act of sending the false statements, rather than the initial purchase of the investments, may be the occurrence or event giving rise to their claims.[FN6] *See Hofmann,* 984 F.2d at 1381 (explaining that Paine Webber's active concealment of its wrongdoing can "be viewed as an independent cause of action based on a duty owed by PaineWebber to its customers to inform them of a broker's wrongdoing"); Quinton F. Seamons, Does Securities Arbitration Go On Forever? Eligibility and Statutes of Limitation, 8 Insights 17, 19 (May, 1994) (noting that the Director of Arbitration of the NASD has expressed the position that "[i]t has been determined that the purchase date is not [necessarily] the event or occurrence that gave rise to [the] dispute").

5. The present record on appeal is insufficient to allow this court to determine whether or not Merrill Lynch perpetrated a continuing fraud on the Cohens.

6. We express no opinion, however, as to the applicable "occurrence or event" in a case in which a broker used fraud to procure the sale of securities and then continued to conceal the fraud. In this case, if the Cohen's allegations are correct, Merrill Lynch did not merely conceal the fraud, but rather affirmatively misstated the value of the Cohens' investments over a six year period.

On remand, the district court should examine each of the Cohens' claims in order to determine what is the "occurrence or event" giving rise to that claim.[FN7] The court should then determine if more than six years has elapsed from that event and send any claims that remain viable to arbitration. Although our holding may compel federal courts to hold "mini-trials" on timeliness, which may be followed by full arbitration if the claims are not deemed time-barred, "concerns for judicial economy alone are not sufficient to justify interference with the binding agreement of the parties." *Goldberg,* 912 F.2d at 1422.

7. For example, with respect to the Cohens' claim for breach of fiduciary duty, if there is such a duty, then each misrepresentation might be an event or occurrence giving rise to a claim for breach of fiduciary duty. If, by contrast, the Cohens' fraud claim is predicated solely upon the unsuitability of their purchase, then the relevant "occurrence or event" may be the investment.

*Cohen,* 62 F.3d at 384–85.

■ As can be seen from footnote 6, above, Judge Kravitch drew a distinction between "merely conceal[ing] fraud," and "affirmatively misstating the value of ... investments...." Additionally, in Footnote 7, Judge Kravitch states that each individual misrepresentation by the defendants may constitute a separate event under a breach of fiduciary duty theory. While Plaintiffs' Complaint does not clearly set forth separate causes of action for individual alleged wrongs stemming from the series of events that allegedly took place after the purchase of their securities, it does contain statements and allegations suggesting the occurrence of individual breaches of duty. For example, in Paragraph 3 of their Complaint, Plaintiffs state:

Some of the wrongs complained of took place from the inception of the offering for sale of these limited partnerships. Others took place during the life of the limited partnerships when the Defendant, without prior notice or warning, ... changed the operating philosophies of the limited partnerships.

Plaintiffs' Complaint ¶ 3, *quoted in* Plaintiffs' memorandum in opposition, at 3.

While the allegations in Plaintiffs' Complaint could form the basis for claims of breach of fiduciary duty or contract, Plaintiffs assert no such claims; instead, their Complaint is premised entirely upon theories of fraud. However, the Statement of Claim Plaintiffs filed before the NASD contained what appears to be a breach of contract claim titled: "Breach of Securities Industry Standards." This claim—similar to the claims in Plaintiffs' Complaint—was all inclusive, and lumped together all of Defendant's wrongful acts. Thus, it is no surprise that the Arbitration Division of the NASD found the date Plaintiffs purchased their securities to be the event giving rise to their claims. In light of the reasoning in *Cohen*, a more carefully drafted Complaint might separate the different possible causes of action contained in Plaintiffs' allegations. The Court notes, however, that *Cohen* was not decided until August 30, 1995, while the NASD dismissed Plaintiffs' claims on August 8, 1995. It is therefore unclear how the NASD would have responded to Plaintiffs' arguments had it had the benefit of Judge Kravitch's reasoning in *Cohen*.

Of course, had it considered *Cohen*, the NASD may have concluded that it was not the proper forum to resolve the parties' eligibility disputes. The *Cohen* court clearly directed the district court to "examine each of the . . . claims in order to determine what . . . 'occurrence or event' [gave] rise to that claim." *Cohen*, 62 F.3d at 385. For the reasons set forth below, however, it is this Court's opinion that the NASD does indeed have jurisdiction to consider the parties' eligibility dispute in this case.

The Court's conclusion is based upon the parties' arbitration agreements. It must be borne in mind that arbitration agreements are no more than contracts to which the usual rules of contract interpretation apply. *AT & T Technologies, Inc., v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Blue Gray Corps. I & II v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 921 F.2d 267, 269 (11th Cir.1991). Accordingly, the will of the parties, as expressed in their arbitration agreement, determines which avenues of relief are available. There is no question that different arbitration agreements may incorporate the provisions of the NASD Code to different degrees; some may make arbitration the parties' sole recourse, while others may make it merely one of several possible options. While it is true that parties cannot be compelled to arbitrate disputes unless they have agreed to do so, when the parties clearly and unmistakably intended to refer a dispute to arbitration, their will must be respected. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). In addition, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ——, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995), quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254–55, 103 L.Ed.2d 488 (1989), *quoted in Cohen, supra*, 62 F.3d at 384. Moreover, the Arbitration Act's preference for arbitration applies "whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay *or a like defense to arbitrability.*" *Mastrobuono*, —— U.S. at —— n. 8, 115 S.Ct. at 1218 n. 8, quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added).

Plaintiffs do not contest Defendant's assertion that each of the customer agreements signed by Plaintiffs assigned "[a]ny controversy arising out of or relating to . . . this agreement" to arbitration. Affidavit of Machcinski, ¶ 9. The Court reads this provision as a "clea[r] and unmistakabl[e]" expression by the parties of their intent to submit all of their disputes to arbitration, including those regarding eligibility for arbitration. *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1418–19. Significantly, no such provision was quoted in *Cohen*. Accordingly, the NASD has jurisdiction over the parties' eligibility dispute. Because the law in this

Circuit was uncertain at the time the NASD dismissed Plaintiffs' claims, however, this case shall be returned to the NASD for further consideration.

The Court has reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** that in light of the foregoing, and particularly the reasoning of the Eleventh Circuit Court of Appeals in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen*, 62 F.3d 381 (11th Cir.1995), this case is hereby **DISMISSED** without prejudice, and the parties are directed to return to the NASD for further arbitration proceedings.

**DONE AND ORDERED.**